IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTONIO AND JOANNA SMITH, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 8:22-cv-1684-TJS |
| CARDINAL FINANCIAL CO., LP, | * | |
| Cardinal. | * | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

Pending before the Court is the Motion to Dismiss Amended Complaint and Memorandum in Support ("Motion") (ECF No. 26) filed by Defendant Cardinal Financial Co., LP ("Cardinal").[1] Having considered the submissions of the parties (ECF Nos. 26, 30 & 31), the Court finds that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be granted as to Count I and denied as to Counts II through V.

**I.     Background**

Plaintiffs Antonio and Joanna Smith ("Plaintiffs") filed this lawsuit against Cardinal on July 8, 2022, and subsequently amended their complaint on November 10, 2022. ECF Nos. 1 & 19. Cardinal previously filed a Motion to Dismiss Complaint and in the Alternative Motion for More Definite Statement (ECF No. 12), which the Court denied as moot upon the filing of Plaintiff's Amended Complaint. ECF No. 21. The following facts are derived from the Amended Complaint (ECF No. 19) and are taken as true for purposes of evaluating Cardinal's Motion.

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 10.

1

In October 2019, Plaintiffs refinanced their home with a Department of Veterans Affairs ("VA")-backed mortgage loan in the amount of $607,000 from Cardinal. ECF No. 19 at ¶ 18. During the COVID-19 pandemic, Plaintiffs secured a forbearance, which allowed them to pay $3,673.82 between April and November 2020 and $3,764.20 beginning in December 2020. *Id.* at ¶¶ 19-23. In January 2021, Plaintiffs contacted Cardinal to discuss resuming their normal monthly payments and addressing the arrearage that accumulated during the forbearance period. *Id.* at ¶ 24-25. During that conversation, Plaintiffs discussed entering into a loss mitigation plan offered by the VA called the VA Disaster Extend Modification, which adds missed payments to the end of the loan and forgives any delinquent interest. *Id.* at ¶¶ 27-32. Cardinal indicated that the plan would not require any trial payments and that it would send the modification paperwork within 30-60 days. *Id.* at ¶¶ 29-33. In March 2021, Cardinal sent the loan modification paperwork, which indicated that trial payments would be required. *Id.* at ¶¶ 34-35. Plaintiffs contacted Cardinal multiple times that month and were advised not to sign that modification agreement because "a correct agreement would be forthcoming." *Id.* at ¶¶ 36-39.

In September 2021, Cardinal sent a second modification agreement. *Id.* at ¶ 40. While waiting, Plaintiffs had attempted to refinance their mortgage to obtain a lower interest rate "but were unable to do so based on the pendency of the modification and the consequently lingering forbearance delinquency." *Id.* at ¶ 43. Plaintiffs assert that the arrearage listed in the paperwork was incorrect, that Cardinal had improperly extended their forbearance period beyond December 2020, and that Cardinal incorrectly listed Plaintiffs as twelve months delinquent. *Id.* at ¶¶ 48-50, 61, 64-65. Additionally, Plaintiffs received paperwork in September and October 2021 that reflected different arrearage amounts of $45,139 and $44,997.74 respectively, when the arrearage balance should have remained consistent as they continued to make their monthly

payments. *Id.* at ¶¶51-54. Plaintiffs have made their regular monthly payments since January 2021, except for two payments which Plaintiffs skipped based on conversations with Cardinal. *Id.* at ¶ 44. Combined with the nine missed payments during the forbearance period, Plaintiffs calculate their total arrearage to be approximately $40,683.16. *Id.* at ¶¶ 45-47. The type of loss mitigation plan offered at in September 2021 was for a VA Partial Claim Plan ("VAPCP"), which did not have several features of the Disaster Extend Modification, including forgiveness of delinquent interest and extending the maturity of the loan by a term equal to the number of months owed. *Id.* at ¶¶ 56-63. Plaintiffs assert that the VAPCP was not available to them under 38 C.F.R. § 36.4805(a) because it was more than 120 days after their forbearance ended and that the VAPCP was not in Plaintiffs' financial interest. *Id.* at ¶¶ 58, 62-63. Plaintiffs contacted Cardinal and a representative advised them not to sign the VAPCP and that a new, corrected agreement would be forthcoming. *Id.* at ¶ 66.

In January 2022, Cardinal sent a third modification agreement which again offered a VAPCP. *Id.* at ¶¶ 67, 69. While waiting to receive the plan, Plaintiffs attempted to refinance but were unable to do so because of their outstanding forbearance delinquencies. *Id.* at ¶ 68. The new modification agreement showed an increased arrearage of $49,083.12 with regular payments resuming in March 2022. *Id.* at ¶ 70. However, Plaintiffs' February 2022 mortgage statement was inconsistent with that amount, showing the full amount due as $45,149.10. *Id.* at ¶ 71. Later in January, Cardinal sent Plaintiffs a letter in response to Plaintiffs' emails questioning the inconsistent arrearage amount. *Id.* At ¶ 71. However, the letter listed an arrearage amount of $45,079.92, including interest applicable through October 2021. *Compare id.* at ¶ 74 *with id.* at ¶¶ 51-54 (listing the arrearage as $45,139 and $44,997.74 in correspondence from September and October 2021). The letter also stated that the January 2022 proposed modification included

thirteen months of delinquency, compared to the twelve payments listed in the September 2021 modification, despite the Plaintiffs having not missed any payments in that interim. *Id.* at ¶ 75.

In February 2022, Plaintiffs, through counsel, sent Cardinal a letter addressing the inaccuracies, which Plaintiffs assert was a qualified written response ("QWR") that included a notice of error ("NOE") and a request for information ("RFI") as defined in 12 U.S.C. § 2605(e) and C.F.R. §§ 1024.35-36. *Id.* at ¶¶ 77-84. The letter summarizes Plaintiffs' request for a Disaster Extend Modification and Cardinal's subsequent offers for other modifications, asking for Cardinal to provide Plaintiffs with the paperwork for the Disaster Extend Modification. *Id.*, Ex. A. The letter then "inquire[s] into the accounting and servicing of the above referenced mortgage loan, and for understanding and clarification of any escrow or unapplied funds, and all credits, debits, transactions, actions, payments, and records related to the servicing" of the loan. *Id.*, Ex. A. Next, the letter requests that Cardinal provide (1) a loan transaction history; (2) an itemized statement of Plaintiffs' funds collected to and dispersed from an escrow account; (3) definitions of all transaction codes or terms used in the records requested; (4) all escrow analyses from Plaintiffs' account; (5) all payoff statements; (6) the mortgage and deed of trust documentation; and (7) agreements for any modifications or forbearances on the mortgage. *Id.*, Ex. A. Plaintiffs note in the letter that it is a QWR and as such, Cardinal is required to acknowledge receipt within five days and provide a substantive response within thirty days under 12 U.S.C. § 2605(e)(4). *Id.*, Ex. A. Cardinal never responded to Plaintiffs' NOE nor provided documents in response to Plaintiffs' RFI. *Id.* at ¶ 85.

Plaintiffs plead damages including no longer being eligible for relief that was available at the end of their forbearance period, inability to refinance their home for a lower interest rate, time and effort expended in attempting to resolve this issue, damage to Plaintiffs' credit ratings

due to Cardinal reporting Plaintiffs as late on their payments, and significant emotional distress. *Id.* at ¶¶ 86-92.

## II. Discussion

### A. Legal Standard

#### 1. Dismissal Under Rule 12(b)(6)

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). A complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). While a court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting

5

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." *Id.* So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. *Id.* A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

### 2. RESPA, Regulation X, and QWRs

Congress enacted the Real Estate Settlement Procedures Act ("RESPA") to protect consumers from "certain abusive practices" in the real estate mortgage industry and to ensure that consumers are "provided with greater and more timely information on the nature and costs of the settlement process." 12 U.S.C. § 2601(a); *Robinson v. Nationstar Mortg. LLC*, No. TDC-14-3667, 2019 WL 4261696, at *5 (D. Md. Sept. 9, 2019). The Consumer Financial Protection Bureau ("CFPB") issued Regulation X to interpret and implement RESPA pursuant to its enforcement authority. *See Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 648 (4th Cir. 2022); 12 C.F.R. §§ 1024.1-41. The section titled "loss mitigation procedures" requires mortgage servicers to take certain steps when a borrower applies for loss mitigation measures, such as the loan modifications sought in this case. *See* 12 C.F.R. § 1024.41. Specifically, if the borrower applies for loss mitigation "more than 37 days before a foreclosure sale," the servicer must "[e]valuate the borrower for all loss mitigation options available to the borrower," and send to the borrower "a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer." 12 C.F.R. § 1024.41(c)(1); *Robinson*, 2019 WL 4261696, at *5. "A servicer that fails to comply with Regulation X is liable for actual damages and, upon a finding of a 'pattern or practice' of non-compliance by the servicer, up to $2,000 in statutory damages." 12 U.S.C. § 2605(f)(1); *Robinson*, 2019 WL 4261696, at *6.

6

Under RESPA, loan servicers have a duty to respond to any QWR from borrowers "for information relating to the servicing of the loan." 12 U.S.C. § 2605(e). A QWR must be a "written correspondence" that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). A valid QWR must relate to servicing of the loan, where RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Regulation X contemplates two different types of QWRs: a notice of error ("NOE") and a request for information ("RFI"). *Morgan v. Caliber Home Loans, Inc.*, No. PX-19-02797, 2022 WL 16964705, at *4 (D. Md. Nov. 16, 2022); 12 C.F.R. §§ 1024.35-36. As to NOEs, Regulation X states that "[a] qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section" which triggers the servicer to reply to the NOE. 12 C.F.R. § 1024.35(a). It then lists ten specific categories of errors and an eleventh catchall category for "any other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b). As to RFIs, Regulation X states that "[a] qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section." 12 C.F.R. § 1024.36.

### B. Count I – Mortgage Modification

In Count I, Plaintiffs assert that Cardinal "failed to consider Plaintiffs' ability to resume making normal payments in assessing Plaintiffs' application . . . and, therefore, failed to accurately evaluate them for all loss mitigation options available to them." ECF No. 19 at ¶¶ 94-98. Cardinal states in its opposition that it had discretion whether to offer a loan modification and the type of modification to offer under the applicable regulations. EFC No. 26-5 at 8. Cardinal points to regulations before and after the COVID-19 pandemic to argue it was not legally obligated to offer Plaintiffs a modification and that the option it provided was within the list set forth by the VA guidelines. *See id.* at 8-15. For the reasons stated below, this Court finds that Plaintiffs fail to state a claim upon which relief can be granted and Count I will be dismissed.

The regulations provide that VA-guaranteed loans, like Plaintiffs', "may be modified by written agreement between the holder and the borrower, without prior approval" if certain conditions are met. 38 C.F.R. § 36.4315(a). However, that regulation "does not create a right of a borrower to have a loan modified." 38 C.F.R. § 36.4315(c); *Parks v. RoundPoint Mortg. Servicing Corp.*, No. 18-00326, 2019 WL 1519303, at *8 (S.D.W. Va. Apr. 8, 2019) (holding that "[t]here is no federal law requiring that RoundPoint modify the Loan"); *Robinson*, 2019 WL 4261696, at *9 ("Since Regulation X explicitly does not require a loan servicer to provide a loan modification, the Robinsons' claim that they suffered damages because they did not receive a loan modification is not cognizable under the statute."). During the COVID-19 pandemic, additional regulations were added to create the VAPCP, which was designed to help veterans struggling with COVID-19 financial hardship. 38 C.F.R. §§ 36.4800-10. The regulations were created as an additional home retention option and provide that "[a] servicer may therefore use the partial claim payment option, even in cases where other home retentionn options are feasible,

8

provided the partial claim payment option is in the veteran's financial interest." 38 C.F.R. § 36.4804(a).

The VA publishes "Circulars" periodically to offer guidance on certain regulations. Relevant here is VA Circular 26-21-13, published on July 27, 2021, which lays out a "waterfall" of the VA's preferred home retention options for borrowers with VA-backed loans. *See* ECF No. 26, Ex. C. The Circular designates a category of borrowers who are able to resume their normal monthly payments but who cannot repay COVID-19 arrearages, like Plaintiffs. *Id.*, Ex. C at § 6(b). For these borrowers, a loan servicer can choose between three loss mitigation options to offer without prior VA approval: a VA Disaster Extend Modification, loan deferment, or a COVID-VAPCP. *Id.*, Ex. C at § 6(b). Plaintiffs agree that these three options were the only ones available for Cardinal to offer, given Plaintiffs' ability to make their monthly payments but inability to repay their COVID-19 arrearages. *See* ECF No. 30 at 10-11.

Cardinal offered Plaintiffs the VAPCP in their March 2021, September 2021, and January 2022 modification offers. See ECF No. 19 at ¶¶ 35, 52, 67, 69. Cardinal asserts there is no basis to demand that it provide Plaintiffs with what the Plaintiffs consider to be the most favorable loss mitigation plan. *See* ECF No. 26-5 at 14. Rather, the regulations and guidance create a waterfall of options, including the VAPCP, which Cardinal offered to the Plaintiffs. *Id.* at 13. The waterfall does not require that the options be offered in a certain order, so Cardinal was not bound to offer Plaintiffs' preferred loss mitigation plan. *Id.* Moreover, Cardinal argues it had no obligation to offer a modification at all. *Id.* at 14. Plaintiffs assert that Cardinal "failed to consider Plaintiffs' ability to resume making normal payments in assessing Plaintiffs' application." ECF No. 19 at ¶ 96. Cardinal notes that the VAPCP requires the borrower to be

9

able to resume making normal payments and argues that its VAPCP offer to Plaintiffs demonstrates it considered this factor. ECF No. 26-5 at 16.

Plaintiffs assert in their opposition that the VA regulations and Regulation X in tandem require Cardinal to evaluate Plaintiffs for "all loss mitigation options available to the borrower" and that Cardinal failed to do so. ECF No. 30 at 9-10 (quoting 12 C.F.R. § 1024.41(c)(1)(i)). However, the regulation further provides that the servicer will "[p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, *if any*, it will offer to the borrower." 12 C.F.R. § 1024.41(c)(1)(ii) (emphasis added). In its reply, Cardinal points to the CFPB's commentary on the regulation, which says that the loss mitigation evaluation is in the discretion of the servicer. See ECF No. 31 at 3 (citing 78 FR 10696, 10828). The Court finds that offering only one loss mitigation option to a borrower does not mean that a loan servicer did not consider all of the options available. *See Engle v. Carrington Mortg. Servs., LLC*, No. 3:19-CV-101, 2020 WL 4505900, at *4 (N.D.W. Va. Aug. 5, 2020) ("Under the regulatory framework, [the servicer] has discretion to determine which option(s), if any, it offers an applicant."). The fact that Cardinal offered Plaintiffs one type of loss mitigation plan—the VAPCP—does not mean it did not consider all three of the options.

Lastly, Plaintiffs assert that the VAPCP plan was not available to them at the time Cardinal offered it in September 2021 and January 2022, and therefore, Cardinal would be required to offer one of the other two options set forth in the waterfall. ECF No. 30 at 11-13. Plaintiffs state that the VAPCP plan is available only if offered within 90 days after exiting forbearance. *Id.* at 12 (citing 38 C.F.R. § 36.4805(g). Cardinal addresses this argument by stating that the regulation "only concerns whether a servicer can request payment of a claim after the elapse of 120 days." ECF No. 31 at 6. Even if Plaintiffs were not eligible for a VAPCP, they

assert no basis for a cause of action against a loan servicer who offers a modification option in error.

The Court will dismiss Count I as Plaintiffs have not pled a legally cognizable cause of action. Even in light most favorable to Plaintiffs, Cardinal evaluated Plaintiffs for loss mitigation options under the applicable statutes and regulations and offered Plaintiffs an option. The fact that Plaintiffs did not like the chosen option is not a basis to support Count I.

### C.  Counts II-IV – Qualified Written Requests

In reference to their letter to Cardinal, Plaintiffs invoke both 12 C.F.R. § 1024.35, governing NOEs, and 12 C.F.R. § 1024.36, governing RFIs. ECF No. 19 at ¶¶ 83, 101-114. They assert that Cardinal did not satisfy its duty to acknowledge Plaintiffs' QWR in writing within five days and conduct a reasonable investigation within thirty days. ECF No. 19 at ¶¶ 115-124. In order to state a claim under RESPA for failure to properly respond to a QWR, the plaintiff must demonstrate that the defendant was responsible for the servicing of the plaintiff's loan; the defendant received a valid QWR from the plaintiff that relates to the servicing of a mortgage loan; the defendant failed to respond adequately; and the plaintiff is entitled to actual or statutory damages. *See Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 264–66 (D. Md. 2015); *see also Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc.*, 858 F. Supp. 2d 561, 574–75 (E.D.N.C. 2012). Plaintiffs allege in their Amended Complaint that Cardinal is the servicer of their mortgage loan, and Cardinal does not dispute that it qualifies as a loan servicer under RESPA. *See* ECF No. 19 at ¶¶ 1, 7, 10, 18. Taking the allegations in the Amended Complaint as true and in the light most favorable to Plaintiffs, it is plausible that their letter constituted a QWR, NOE, and RFI, and Cardinal was therefore obligated to respond. Additionally, Plaintiffs pled facts that plausibly support a showing of damages at the motion to dismiss stage regarding

potential options that were foreclosed as a result of Cardinal's lack of response. *See* ECF No. 30 at 25. Therefore, as detailed below, the Court denies Cardinal's Motion as to Counts II-IV and finds that Plaintiff has plausibly stated a claim for these counts.

In Cardinal's Motion, it asserts that Plaintiffs' letter does not concern "servicing" and is therefore not a QWR under RESPA. *See* ECF No. 26-5 at 20-22. Cardinal presents several cases that hold that requests for information relating to loan modifications are not QWRs. *Id.* at 20-21 (consolidating cases with similar holdings). Plaintiffs agree, stating in their opposition that "letters addressing the substance of the loan modification process fall outside this scope." ECF No. 30 at 20. While the law is clear that QWRs must relate to servicing to be actionable under RESPA, there is no requirement that the communication only relate to servicing. *See* 12 U.S.C. § 2605€(1)(A). In *Morgan*, the Fourth Circuit has held that "correspondence *limited to* the dispute of contractual issues that do not relate to the servicing of the loan, such as loan modification applications, do not qualify as QWRs." *Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 651 (4th Cir. 2022) (emphasis added). By contrast, a communication that includes multiple requests, "some of which relate to the servicing of a mortgage loan and some of which do not, can still be considered a QWR for purposes of triggering the response requirements." *Best v. Newrez LLC*, No. GJH-19-2331, 2020 WL 5513433, at *25 (D. Md. Sept. 11, 2020) (quoting *Cooke v. Carrington Mortg. Servs.*, No. TDC-18-0205, 2018 WL 6323116, at *8 (D. Md. Dec. 3, 2018)). In its Motion, Cardinal summarizes the portions of Plaintiffs' letter that relate to their request for the Disaster Extend Modification. *See* ECF No. 26-5 at 21-22. Cardinal asserts that "it is clear that [Plaintiffs'] alleged dispute over arrearage and application of payments is a dispute over the loan modification process." ECF No. 26-5 at 21. However, the letter also notes an accounting

error in the amount Plaintiffs owed and requests information in several categories. *See* ECF No. 19, Ex. A.

Loan servicers have a duty to respond to any QWR from borrowers "for information relating to the servicing of the loan." 12 U.S.C. § 2605(e). Here, Cardinal did not respond to Plaintiffs letter. However, determining whether Counts II-IV are cognizable requires a factual analysis of the contents and timing of the letter. The Court declines to conduct this analysis or determine whether the letter constitutes a QWR on the record as it stands and finds that these claims would be better considered at the summary judgment stage with a more factually complete record. Additionally, Cardinal asserts that Plaintiffs do not allege actual damages suffered "as a result" of the violation, as required by RESPA. ECF No. 26-5 at 22. Cardinal argues that Plaintiffs sent the letter after requesting and being offered several loan modifications, so attempts to conflate Cardinal's lack of response and the loan modification claims "are temporally not plausible." *Id.* at 24. Plaintiffs acknowledge in their opposition that "some of the damages alleged occurred prior to the maturation of Counts II-IV," however, their letter requested a correction to reflect an accurate balance of their arrearages. ECF No. 30 at 25. Plaintiffs assert that they could not have signed a modification agreement without an accurate balance and had Cardinal responded to the QWR with that information Plaintiffs would, "at minimum, have had the opportunity to end their delinquency and begin restoring their credit." *Id.* At this stage of the proceedings, Plaintiffs have pled plausible claims that they suffered damages as a result of Cardinal's failure to properly respond to the QWR. Any further question of whether the damages pled are sufficient can be decided on a fuller record.

The Court denies Cardinal's Motion as to Counts II-IV and finds that Plaintiffs stated plausible claims for these Counts.

### D. Maryland Consumer Protection Act (Count V)

Cardinal also seeks to dismiss Plaintiffs' claims under the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law §§ 13–101 to 13–320. The MCPA prohibits "unfair or deceptive trade practices," including any: "(1) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers . . . (3) Failure to state a material fact if the failure deceives or tends to deceive." *Id.* § 13-301. To state a claim under the MCPA, "a plaintiff must allege (1) an unfair or deceptive trade practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Boardley v. Household Fin. Corp. III*, 39 F. Supp. 3d 689, 712 (D. Md. 2014) (internal quotations omitted). Plaintiffs allege that Cardinal made misleading or conflicting statements and failed to provide Plaintiffs certain information in connection to their mortgage, in violation of sections 13-301(1) and (3) of the MCPA.

Cardinal asserts in its Motion that because Plaintiffs' MCPA claim is premised on fraud, it is subject to the heightened pleading standards of Rule 9(b). *Id.* at 25. Rule 9(b) requires the plaintiff to plead his or her fraud claim with particularity as to the circumstances constituting fraud, including "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999)). Cardinal argues that Plaintiffs' claims are "vague and nebulous, and do not establish any intent of Cardinal to defraud them." ECF No. 26-5 at 26. Moreover, Cardinal asserts that Plaintiffs' MCPA claim "is based entirely on their erroneous theory that Cardinal was obligated to provide them with a Disaster Extend Modification," which Cardinal argues is not a viable legal theory. ECF No. 26-5 at 26.

14

Plaintiffs respond that the MCPA does not require a showing of intent and they need not meet a heightened pleading standard. *See* ECF No. 30 at 29-30. The MCPA "makes actionable a range of misrepresentations, both fraudulent and nonfraudulent," but sections (1) and (3) do not require proof of scienter. *Myles v. Rent-A-Ctr., Inc.*, No. JKB-15-300, 2016 WL 3917212, at *8 n. 9 (D. Md. July 19, 2016) (citing *Luskin's, Inc. v. Consumer Prot. Div.*, 726 A.2d 702, 718 (Md. 1999)). Instead, "Maryland courts have held that to 'to incur liability, [defendants] [do] not have to know of the falsity of their representations. Nor must they have . . . the intent to deceive their purchasers in order to violate the [M]CPA.'" *Id.* (quoting *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 674 A.2d 106, 136 (Md. Ct. Spec. App. 1996), *aff'd*, 695 A.2d 153 (Md. 1997). As to the pleading standard, subsections (1) and (3) need not be pled with particularity because they are "the provisions barring unfair and deceptive practices," which are not subject to Rule 9(b)'s standard. *Gillis v. Household Fin. Corp. III*, No. GJH-18-3923, 2019 WL 3412621, at *9 (D. Md. July 29, 2019). However, Plaintiffs argue that even if the Amended Complaint were subject to the heightened pleading standard, it would satisfy the particularity requirements because they have "alleged dates of phone calls with Cardinal, the content of those calls, and even, where possible, the name of Cardinal's representative." ECF No. 30 at 30-31.

Lastly, Cardinal argues that Plaintiffs cannot show actual damages resulting from Cardinal's misstatements or omissions "as Cardinal was under no obligation to offer or provide Plaintiffs' preferred loss mitigation option." ECF No. 26-5 at 26. Plaintiffs disagree, asserting that they have suffered actual damages, including inability to refinance at a low interest rate, credit damage, emotional distress, and inability to move forward with any modification agreement. ECF No. 30 at 32-34.

Taking the allegations in the Amended Complaint as true and in the light most favorable to Plaintiffs, they have pled that they were prevented from refinancing their home or proceeding with a mortgage modification while they waited for Cardinal to correct errors to their payment history, past due amounts, and forbearance status. *See* ECF No. 19 at ¶¶ 125-131. Those facts, among others, suffice to state a plausible claim for violating the MCPA at this early stage of the litigation. Thus, their claims in Count V survive dismissal.

### III. Conclusion

For the reasons set forth above, Cardinal's Motion (ECF No. 26) is **GRANTED** as to Count I and **DENIED** as to Counts II-IV.

Date: August 30, 2023

/s/
Timothy J. Sullivan
United States Magistrate Judge